The PEOPLE of the State of Colorado,
Plaintiff–Appellee,

v.

William Henry HARTE, Defendant–
Appellant.

No. 03CA1366.

Colorado Court of Appeals,
Div. III.

Nov. 17, 2005.

Certiorari Denied April 3, 2006.*

* Justice EID does not participate.

John W. Suthers, Attorney General, Wendy J. Ritz, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

David S. Kaplan, Colorado State Public Defender, Ann M. Aber, Deputy State Public Defender, Denver, Colorado, for Defendant–Appellant.

CARPARELLI, J.

Defendant, William Henry Harte, appeals the judgment of conviction entered upon a jury verdict finding him guilty of obtaining a controlled substance by fraud and deceit and attempting to obtain a controlled substance by fraud and deceit. We affirm.

The evidence showed that defendant obtained a prescription for sixty tablets of morphine on November 3, 2001, twenty tablets of Oxycontin on November 11, and forty-five tablets of Oxycontin on November 20. He obtained each of these prescriptions from a different doctor.

On November 26, 2001, defendant went to the emergency room at St. Joseph's Hospital complaining he had back pain as the result of slipping on ice and falling about 9 o'clock that morning. Defendant told the emergency room physician, Dr. Wells, that he had taken only Advil for the pain, had been to St. Joseph's for back pain about a month earlier, and had no primary care physician.

Dr. Wells testified that she asks questions to determine whether a patient is currently being prescribed medication by another physician because she does not want to give medications that could adversely interact with anything the patient is already taking and she wants to make sure the patient is not getting too much or too little medication. Defendant did not tell Dr. Wells that he had recently filled prescriptions for narcotics from two other physicians.

Dr. Wells gave defendant an injection of Demerol and prescribed Percocet for pain relief. She testified that she would not have prescribed additional medication had she

known defendant had current prescriptions for Oxycontin and morphine.

The prosecution also presented evidence that, two days later, defendant went to the emergency room at St. Anthony's Central where Dr. Tripp treated him. Again, defendant said he had back pain as the result of slipping on ice and falling. He told Dr. Tripp the fall had occurred that morning. Dr. Tripp asked defendant whether he had had previous back injuries, who had treated him, and whether he was under the care of any other doctor. Defendant told Dr. Tripp that he had been to a pain specialist two months earlier, but explained that he was no longer under the specialist's care. He also told Dr. Tripp that his last visit to an emergency room was about six months earlier and said that Advil was the only medication he was taking. Defendant did not ask Dr. Tripp for pain medication.

X-rays confirmed that defendant had a back injury. However, Dr. Tripp became suspicious because defendant said he had fallen at his apartment in Highlands Ranch and there are several emergency rooms closer to his home than St. Anthony's Central. Dr. Tripp called a local pharmacy, which informed him that it had filled five prior prescriptions for defendant for narcotics in the month of November and that the pharmacy had a "narcotic alert" on him. Dr. Tripp informed the police, who arrested defendant at the hospital.

The jury found defendant guilty of obtaining a controlled substance, Percocet, by fraud and deceit, and attempting to obtain a controlled substance by fraud and deceit. The court sentenced him to three years in community corrections for obtaining the Percocet from Dr. Wells and one year for attempting to obtain a controlled substance from Dr. Tripp by fraud and deceit. The court directed that the sentences would be served consecutively.

## I.

Defendant challenges on vagueness grounds the constitutionality of § 18–18–415(1)(b), C.R.S.2005, on its face and as applied. We are not persuaded.

Although defendant was charged with violation of § 18–18–415(1)(a), C.R.S.2005, he does not challenge the constitutionality of that provision. Instead, he challenges § 18–18–415(1)(b), which states:

> Information communicated to a practitioner in an effort to procure a controlled substance other than for legitimate treatment purposes or unlawfully to procure the administration of any such controlled substance shall not be deemed a privileged communication.

A court should uphold a facial challenge to a statute only when the enactment is impermissibly vague in all its applications. If the statute survives a facial challenge, a litigant may succeed on a vagueness claim only by demonstrating the statute is impermissibly vague as applied to him. *People v. Frantz*, 114 P.3d 34 (Colo.App.2004). A statute is unconstitutionally vague when it "either forbids or requires the doing of an act in terms so vague that persons of ordinary intelligence must necessarily guess as to its meaning and differ as to its application." *People v. Frantz, supra*, 114 P.3d at 36.

Statutes are presumed to comport with constitutional standards. *People v. Hickman*, 988 P.2d 628 (Colo.1999). A party challenging a statute's validity bears the burden of establishing unconstitutionality beyond a reasonable doubt. *People v. Oglethorpe*, 87 P.3d 129 (Colo.App.2003).

## A.

Defendant first contends that § 18–18–415(1)(b) does not provide fair notice of conduct that is prohibited and, consequently, that the court erred when it held that the statute is not unconstitutionally vague on its face. We disagree.

Section 18–18–415(1)(b) plainly provides that information communicated to a practitioner in an effort to procure a controlled substance other than for legitimate treatment purposes or to unlawfully procure the administration of any such controlled substance is not entitled to protection as privileged communication.

We perceive no vagueness. Section 18–18–415(1)(b) operates as an exception to the physician-patient privilege found at § 13–90–107(1)(d), C.R.S.2005. To the extent that defendant contends that the physician-patient privilege is guaranteed by the right to due process, he provides no analysis or case law for that contention. To the extent he relies on *Clark v. District Court,* 668 P.2d 3 (Colo.1983), and contends that the prosecution was required to prove that he waived the privilege, we conclude that when § 18–18–415(1)(b) applies, there is no privilege and, thus, no waiver is required.

### B.

■ We also reject defendant's contentions that § 18–18–415(1)(b) is void for vagueness because (1) the statute does not specify who is responsible for determining whether information communicated to a practitioner is for legitimate treatment purposes, (2) a private practitioner is entrusted with determining whether the patient has abrogated the physician-patient privilege, (3) the statute fails to provide a mechanism whereby a neutral and detached magistrate determines whether the patient has abrogated the privilege, and (4) there are no criteria for deciding whether the privilege has been abrogated. Defendant premises these contentions on § 13–90–107(1)(d), which establishes the physician-patient privilege.

Article 90 of Title 13 pertains to witnesses who appear before the courts. In § 13–90–107(1)(d), the General Assembly established that certain health care providers may not be questioned without the consent of the patient "as to any information acquired in attending the patient which was necessary to enable him to prescribe or act for the patient." Section 18–18–415(1)(b) plainly and necessarily refers to the privileges established in § 13–90–107(1)(d). Determinations regarding the application of these statutes with regard to the admissibility of testimony in court proceedings rest with the trial court, not with the recipient of such communications, a prospective witness, or another health care provider. Thus, we reject defendant's contention that § 18–18–415(1)(b) is unconstitutionally vague and does not specify who is responsible for determining whether information was communicated for legitimate treatment purposes. Defendant's analysis and case citations do not support his contention that such rulings have constitutional implications, and we perceive no such implications.

We thus perceive no vagueness on the face of the statute.

### C.

■ Defendant next contends that this provision is void for vagueness as applied to him. Again, we are not persuaded.

Defendant argues that the trial court relied on the assumption of a criminal act in order to invoke that statute. That is, he contends the court concluded that he was communicating with the doctors "in an effort to procure a controlled substance other than for legitimate purposes or unlawfully to procure the administration of [a] controlled substance." Defendant argues that this conclusion results in circular reasoning and violates his right to be presumed innocent absent proof beyond a reasonable doubt to the satisfaction of a jury.

Defendant's legal analysis and case citations do not support the conclusion that the statute is impermissibly vague as applied to him. The statute provides a clear standard for trial courts to apply, and the trial court here applied it correctly and without violation of defendant's right to due process.

■ We also reject this contention to the extent that defendant asserts that the trial court's determination of this evidentiary issue violated his right to due process by depriving him of the presumption of innocence or the requirement that his guilt be proved beyond a reasonable doubt.

Here, the court instructed the jury regarding the presumption of innocence, the burden of proof, and the requirement that the prosecution prove each element of each offense beyond a reasonable doubt. We perceive no basis to conclude that admission of the evidence for the jury's consideration undermined the vitality or application of those instructions or resulted in a conviction con-

trary to the constitutional principles upon which defendant bases this contention.

Thus, we conclude that § 18–18–415(1)(b) is not unconstitutional as applied to defendant.

## II.

■ Defendant next contends that the evidence is insufficient to prove that he obtained the Percocet by misrepresentation and that the evidence is insufficient to prove he took a substantial step toward committing the crime of obtaining a controlled substance by fraud and deceit. We disagree.

■ A challenge to the sufficiency of the evidence requires a reviewing court to determine whether the evidence, when viewed as a whole and in the light most favorable to the prosecution, is substantial and sufficient to support the conclusion by a reasonable person that the defendant is guilty of the crime charged beyond a reasonable doubt. *Kogan v. People,* 756 P.2d 945 (Colo.1988).

Section 18–18–415(1)(a) prohibits obtaining a controlled substance by, among other means, fraud, deceit, misrepresentation, subterfuge, or concealing a material fact.

Here, the first count alleged that defendant obtained the Percocet from Dr. Wells "by fraud, deceit, misrepresentation[,] and subterfuge." After the close of evidence, defendant proposed an instruction for count one that required proof he obtained the medication from Dr. Wells "by deceit or misrepresentation" and that omitted references to obtaining the medications by fraud or subterfuge. The court accepted the instruction over the prosecution's objection.

A representation, among other things, is a statement made to convey a particular impression of something with the intention of influencing the actions of another. *Webster's Third New International Dictionary* 1926 (1986). A misrepresentation is a false, incorrect, or misleading representation by words or other means that under the existing circumstances amounts to an assertion not in accordance with the facts. *Webster's, supra,* at 1445; *see also People v. Lewis,* 710 P.2d 1110, 1116 (Colo.App.1985) (misrepresentation is "a false representation of a past or present fact"); *Black's Law Dictionary* 435, 1022 (8th ed.2004) (defining misrepresentation as the act of making a false or misleading assertion; and deceit as the act of intentionally giving a false impression). Deceit is the act or practice of deceiving, as by falsification or concealment. *Webster's, supra,* at 584.

Thus, the terms "deceit" and "misrepresentation" include representations that convey a false understanding, whether by communication of false information or by concealment of information.

### A.

Defendant contends that, although the evidence shows he concealed information from Dr. Wells, it is not sufficient to show that he made false statements to Dr. Wells and, thus, is insufficient to show that he obtained the medications from Dr. Wells "by deceit or misrepresentation," as required by the instructions.

We conclude that, when viewed as a whole and in the light most favorable to the prosecution, the evidence is substantial and sufficient to support the conclusion by a reasonable person that defendant obtained the Percocet from Dr. Wells by deceit and misrepresentation; that is, by conveying a false understanding regarding the purpose of his visit, his medical condition, past treatment for it, and existing prescriptions for narcotic pain relief.

### B.

■ Defendant also contends that the evidence is insufficient to prove that his conduct constituted a substantial step toward obtaining the administration of a controlled substance from Dr. Tripp by deceit and misrepresentation. We disagree.

Defendant argues that he truthfully told Dr. Tripp that he had back pain, that he was merely seeking treatment for that pain, and that he did not ask Dr. Tripp for a controlled substance to treat the pain.

The court correctly instructed the jury that a substantial step "is any conduct, whether act, omission or possession, which is

strongly corroborative of the firmness of the actor's purpose to complete the commission of the offense."

As to this count, there was evidence that the day after defendant went to an emergency room on the south side of the metropolitan area and complained of having fallen the morning of the visit, he traveled to another emergency room on the north side, complained of having fallen the morning of that visit, and lied about the date of his last visit to an emergency room. There was also evidence that the day after Dr. Wells prescribed narcotic medication for pain relief, defendant was deceitful when he told Dr. Tripp he was only taking Advil. We conclude that, when viewed as a whole and in the light most favorable to the prosecution, the evidence is substantial and sufficient to support the conclusion by a reasonable person that defendant took a substantial step toward obtaining a controlled substance from Dr. Tripp by fraud and deceit.

### III.

■ Defendant also contends that the state's theory of guilt, that defendant obtained and attempted to obtain controlled substances by concealing information, effected a constructive amendment to the charged offenses and violated his due process right to notice of the accusations against him. We disagree.

■ The charging document must inform the defendant of the charges so that he can defend against those charges and be protected from further prosecution for the same offense. *People v. Petschow,* 119 P.3d 495 (Colo.App.2004). A constructive amendment occurs when an essential element of the charged offense is changed, thereby altering the substance of the charging document. *People v. Rodriguez,* 914 P.2d 230 (Colo. 1996).

As discussed earlier, the terms "fraud," "deceit," and "misrepresentation" include representations that convey a false understanding, whether by communication of false information or by failure to disclose information. Therefore, we conclude that the prosecution's argument did not effect a constructive amendment, that the charges notified him of the accusations against which he would be required to defend, and that his right to due process was not violated.

### IV.

■ Defendant contends that the trial court violated his constitutional right to present a defense when it rejected his instruction on the theory of defense. We disagree.

■ A defendant is entitled to a jury instruction on his theory of the case when there is evidence in the record to support the instruction. *People v. Tippett,* 733 P.2d 1183 (Colo.1987); *People v. Gracey,* 940 P.2d 1050 (Colo.App.1996). A jury instruction on the theory of the case that explains evidence must be general and brief, and must instruct the jury on the legal effect of the explanation. *People v. Dore,* 997 P.2d 1214 (Colo. App.1999). To determine whether the jury has been effectively informed of the defendant's theory of defense, the court must consider the instructions as a whole. *People v. Inman,* 950 P.2d 640 (Colo.App.1997).

■ It is not error for a trial court to refuse to give a theory of the case instruction that simply calls attention to specific points of evidence or contains argumentative matter. *People v. Gracey, supra.* The trial court has an obligation to correct a theory of the case instruction or to integrate the substance of the theory of the case instruction into the instructions submitted to the jury. *People v. Nunez,* 841 P.2d 261 (Colo.1992). The court may also consider whether the defendant's closing argument adequately represented the theory to the jury. *People v. Inman, supra.*

Here, defendant proposed, and the court accepted, the following instruction:

> It is [defendant's] theory of defense that he visited Dr. Wells for a slip and fall injury to his back, and further, that he visited with Dr. Tripp due to continuing pain from that injury. [Defendant] did not request controlled substances or take a substantial step to obtain controlled substances from either doctor.

However, the court rejected the following sentence, which defendant proposed as the final sentence of the instruction: "Specifically, [defendant] did not knowingly perpetrate a fraud or misrepresent to either Dr. Wells or Dr. Tripp in order to obtain or attempt to obtain controlled substances." Defendant objected to use of the instruction without the final sentence, arguing that it did not accurately state defendant's theory.

The trial court held that the additional sentence restated evidence or argument and, therefore, was improper. However, the court allowed defense counsel to present argument consistent with the sentence he requested.

We conclude that the court's instruction accurately described the theory of the defense. The additional sentence proposed by defendant merely called attention to specific points of evidence and argued conclusions to be drawn from that evidence. *See People v. Inman, supra.* In addition, the court permitted defendant's counsel to argue those conclusions in closing. *See People v. Inman, supra.*

We conclude that the instruction given by the trial court accurately stated defendant's theory and that the trial court did not abuse its discretion by omitting the last sentence.

The judgment is affirmed.

TAUBMAN and PICCONE, JJ., concur.